In re KNICKERBOCKER HOTEL CO.

KREUGER et al. v. KNICKERBOCKER HOTEL CO. et al.

CITY NAT. BANK & TRUST CO. OF CHICAGO v. SAME.

Nos. 5537, 5538, 5548, 5549.

Circuit Court of Appeals, Seventh Circuit.

Feb. 14, 1936.

Rehearing Denied March 12, 1936.

Samuel A. Ettelson, Leonard B. Ettelson, Edward C. Higgins, and Carl J. Appell, all of Chicago, Ill., for appellants, Carl F. Kreuger and others.

Harry B. Hurd, Andrew J. Dallstream, and Creighton S. Miller, all of Chicago, Ill., for appellant City Nat. Bank & Trust Co. of Chicago, trustee.

Don Kenneth Jones and Vincent O'Brien, both of Chicago, Ill., for appellee Bondholders' Committee.

Joseph H. Schwartz, of Chicago, Ill., for appellee Knickerbocker Hotel Co.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

These appeals question the propriety of an order of the District Court approving as properly filed and in good faith the petition of Knickerbocker Hotel Company for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207).

It was asserted by appellants in support of their contention in the District Court that the petition was not properly filed or in good faith, that:

"(a) Same was filed by a corporation not organized for the purpose of carrying on and conducting a lawful business but by a corporation organized solely for the purpose of attempting to confer upon this Court jurisdiction over certain property. * * *

"(b) Said purported corporation was not at the time of the filing of said petition a corporation within the meaning of section 77B of the Bankruptcy Act and entitled to relief under its provisions."

The Davis Hotel Corporation was an Illinois corporation which owned and operated the Davis Hotel, later called the Knickerbocker Hotel. The corporation issued bonds in the sum of $2,500,000 secured by its trust deed to Greenebaum Sons Bank & Trust Company, as trustee. Appellant City National Bank & Trust Company of Chicago later became trustee under this trust deed. The bonds being in default, on December 12, 1929, a bondholders' protective committee was organized and approximately 98 per cent. of the unpaid bonds were deposited with it. On December 23, 1929, the trustee under the indenture securing the bonds filed in the state court a bill to foreclose the mortgage on the property and the Chicago Title & Trust Company was

appointed receiver of the properties. On July 15, 1933, a decree of foreclosure and sale was entered. The bondholders' committee, having previously acquired title to the equity in the property through a sale under a supposed dissolution proceeding brought against the Davis Hotel Corporation, which title was placed in one Harry G. Zimmerman as nominee of the committee, bid in the property at the foreclosure sale on November 24, 1933, for $160,000.

The committee formulated a plan of reorganization having the approval of the holders of 98 per cent. of the unpaid bonds, which plan they sought to make effective in the state court proceeding, but the chancellor refused to give his approval of the plan or to confirm the sale and on or about January 23, 1935, upon his own motion, entered an order removing the receiver and enjoining any person from taking steps to remove the matter from his court or from bringing about a reorganization under the bankruptcy statutes of the United States. (This order was later reversed on appeal.) The bondholders' protective committee thereupon brought about the organization of the Knickerbocker Hotel Company, hereinafter called Knickerbocker, to which corporation Harry G. Zimmerman, as nominee of the bondholders' committee, conveyed the title to the property securing the Davis Hotel bond issue, subject to said bond issue. Knickerbocker, having assumed the obligation of such bond issue, immediately filed its petition under section 77B of the Bankruptcy Act. Appellants contend that it was error for the District Court to deny their application to set aside an order holding that a petition filed under these circumstances was properly filed and in good faith.

The pertinent portions of the master's findings, which were subsequently approved by the District Court, are appended in the margin[1] from which may be gleaned a more detailed statement of facts. The

[1] "* * * Charles A. McDonald, a master in chancery * * * to whom as such master * * * the above * * * matter was * * * referred, to pass upon the questions, (1) was the petition, of the debtor * * * filed in good faith, (2) does it contain the necessary jurisdictional allegations, and, (3) to report my conclusions on the questions of fact and law * * * (does) find:

"1. That the court has jurisdiction of the subject-matter of said cause and said parties thereto.

"2. That on June 15, A. D. 1926, Davis Hotel Corporation, an Illinois corporation, issued bonds in the sum of $2,500,-000 which were secured by its trust deed to Greenebaum Sons Bank & Trust Company, as trustee, * * *; that subsequent thereto City National Bank & Trust Company of Chicago became, and now is, * * * acting successor trustee * * *

"3. That the real estate * * * is improved with a fourteen story hotel building containing about 407 rooms, located * * * near the Drake Hotel, on the near north side of Chicago; that * * * prior to the institution of these proceedings, the name * * * was changed from the Davis Hotel to the Knickerbocker Hotel.

"4. That prior to December 12, A. D. 1929, default was made in the payment of bonds and coupons of the above issue; that on December 12, A. D. 1929, a bondholders' protective committee for the holders of so-called Greenebaum bonds was organized * * *, that at the time of the * * * hearing before me there was on deposit with * * * the said committee approximately 98 per cent. of the unpaid bonds of said issue.

"5. * * * on December 23, A. D. 1929, the then trustee * * * filed proceedings for foreclosure * * * in the superior court of Cook county * * *; that a receiver was immediately appointed, and a decree of sale entered therein, on July 15, A. D. 1933.

"6. That the said * * * committee formulated and adopted a plan of reorganization, which was assented to by the holders of approximately 98 per cent. of the unpaid bonds of said issue; that in pursuance of said plan, a sale was had in the said foreclosure proceedings on November 24, A. D. 1933; that a motion for confirmation of the sale and for approval of the plan was presented to the presiding chancellor * * *; that the said chancellor refused to permit said property to be reorganized as proposed by said plan, and to confirm the sale had pursuant thereto, presumably because of the inadequacy of the amount bid at said sale; that at the time question of confirmation was before the chancellor for consideration, he instructed his clerk to take the names and addresses of a number of bondholders then present in the courtroom, advising said bondholders that the chancellor would undertake to represent their interests; that said chancellor stated he wanted their names and addresses for that purpose, and promised to, thereafter, communicate with them by postcard, and further stated that he could put someone in possession of the property in question, who would produce annually an income of $20,-000 in excess of the net revenue then pro-

sufficiency of the evidence to support the facts there found is not challenged.

Appellants assert that Knickerbocker was organized for the obvious purpose of immediately incurring debts which it could not pay and did not intend to pay in the ordinary course of business, but incurred only for the purpose of filing a reorganization proceeding under the Bankruptcy Act. If this assertion were literally true, and stood alone without the supporting equities here present, it would necessarily follow that petitioner lacked the good faith contemplated by section 77B and the court should not hesitate to bring an abrupt end to such a proceeding.

■ However, a court of bankruptcy, being a court of equity, looks through the form to the substance of the transaction in determining whether the petition of Knicker-

---

duced by the receiver; that if he (the chancellor) should so choose to represent said bondholders and place said other person in possession of said property, he (the said chancellor) would continue the matter of any hearing upon a plan of reorganization for an indefinite period and see what revenue he could thus produce out of the property.

"7. That, thereupon, the said chancellor set aside said sales so had, and did thereafter, on or about *January 23, A. D. 1935*, enter an order *upon his own motion, and without notice*, charging said receiver with a breach of duty, and removing said receiver theretofore appointed and qualified in said cause from office and appointing one Oscar Weiner, receiver of said property, and did also then and there upon said chancellor's own motion, enter an alleged injunctive order, *restraining any person from taking any steps to bring about a reorganization of the subject-matter involved herein, under the bankruptcy statutes of the United States of America.* A copy of the restraining order so entered is returned with the exhibits in this cause.

"8. * * * it further appears * * * that on January 23, A. D. 1935, said bondholders' protective committee duly adopted a resolution authorizing the employment of Defrees, Buckingham, Jones & Hoffman, as attorneys for the committee; that as such attorneys, they were authorized to take such steps as in their opinion might be desirable to make possible a reorganization of said bond issue, under section 77B of the Bankruptcy Act; that Harry G. Zimmerman, as the nominee of said committee, was by said resolution authorized and directed to convey to the Knickerbocker Hotel Company, a corporation to be organized under the laws of the state of Illinois, the title to the property, real and personal, securing the Davis Hotel bond issue, which title was then in said Harry G. Zimmerman, as such nominee;

"That in furtherance of the provisions of said resolution, said * * * committee, *on January 24, A. D. 1935*, duly caused to be organized the Knickerbocker Hotel Company, by whom the petition was filed in this cause; that on said last mentioned date, its charter was duly issued to it by the secretary of state of Illinois; that said Harry G. Zimmerman duly conveyed said real estate and personal property to the debtor corporation herein, subject to the said first mortgage bond issue; that said debtor corporation immediately filed its petition under section 77B of the Bankruptcy Act; that said debtor corporation, and said bondholders' protective committee, at the time of filing said petition herein, were prepared to speedily submit to the court and the creditors interested in said properties a plan of reorganization, alleged to be fair and equitable; that said corporation was organized at the direction of said committee not only for the purpose of effecting a reorganization of the properties and the indebtedness aforesaid, but also for the purpose of operating said properties upon the completion of said plan of reorganization as a hotel pursuant to the purposes for which said charter was issued by the secretary of state of the state of Illinois; that no fraud, legal or actual, was practiced upon this court in connection with the organization of said debtor corporation and the presentation of said petition herein; that said petition was filed in good faith and is for the best interest of the creditors of said properties; that full disclosure of the facts and circumstances was made to this court at the time of the presentation of said petition for approval, and that bad faith cannot attach to the adoption of a course approved by Congress. * * *

"12. * * * that this court has jurisdiction of the petition of said debtor corporation, it being filed in the territorial jurisdiction of the state within which said debtor corporation was incorporated.

"13. * * * No sound reason exists for attributing to Congress an intention to make a three month and one day existence a prerequisite to opportunity for reorganization of properties such as are here involved, under the highly remedial and beneficent provisions of section 77B of the Bankruptcy Act. The provision for different federal jurisdictions was in my opinion purely one of venue. Congress clearly intended to provide a remedy for distressed mortgage issues such as is shown

bocker here under consideration presents a situation properly cognizable under section 77B of the Bankruptcy Act.

■ We find that a large bond issue has been floated on corporate property; default made; foreclosure proceedings instituted in the state court; receiver appointed by state court who went into possession and operated the property for more than five years prior to the petition herein; a gross income of more than two and one-half million dollars collected; $85,000 paid to the receiver for his compensation; $31,500 paid to receiver's attorney; nothing paid to bondholders by way of principal or interest; taxes in the sum of $101,000 permitted to accumulate and remain unpaid; value of property shrunk far below incumbrance. Finally a plan of reorganization was worked out which was satisfactory to 98 per cent. of the bondholders who were the real owners of the property. The state courts being somewhat restricted in making effective proposed reorganizations when confronted by minority opposition (see Chicago Title and Trust Co. v. Robin, 361 Ill. 261, 198 N.E. 4, Chicago Title and Trust Co. v. Bamburg, 361 Ill. 291, 198 N.E. 10), it was deemed advisable to proceed with a foreclosure sale of the property which was bid in by the bondholders' committee. At the instance of a few of the 2 per cent. of nonassenting bondholders the state court declined to approve the sale, essayed by injunction to retain control, brought forth a fresh receiver, and entered upon the announced purpose of a further period of receivership operation.

The bewildered bondholders were thus confronted with a condition and not a theory; they had invested their money in bonds of a corporation which had become insolvent through the crash of real estate values and other causes over which they had no control; they had honestly, as we believe, taken various steps to bring about a fair adjustment of the unfortunate situation and had been thwarted in their purpose. Ninety-eight per cent. of them still had faith that a court of equity somewhere, somehow, would deliver them from bondage.

It is said that the purpose of Congress in the enactment of sections 77A and 77B of the Bankruptcy Act (11 U.S.C.A. §§ 206, 207) was the creation of machinery for the relief of distressed corporate debtors, yet equally important are the provisions which prevent a minority group from defeating the worthy plan of a majority—in short it is designed to prevent a minority group from developing a "nuisance" value far in excess of the actual value of their claims.

We thus find 98 per cent. of the real owners of this corporate property, who had thus far failed in their quest for relief, turning to the provisions of the newly enacted section 77B of the Bankruptcy Act. True the present corporation was brought into being for the express purpose, in part, of assuming the indebtedness due the bondholders, but can it be said that any fraud attaches to the act of assuming the debt of another? Who has been defrauded? The answer is obvious. Nor was the conveyance of the property of the first debtor corporation to individuals to hold in trust for bondholders in fraud of anyone—it was only a step in the contemplated plan of state court reorganization, and no one has

---

by the record in this case. Here the properties, in truth and fact, belonged to the bondholders. Ninety-eight per cent. thereof desired to end a five year old state court equity receivership, but the chancellor of the state court announced that he proposed an indefinite operation of the property under a new receivership. In my opinion that procedure was one of the very things Congress intended to prevent and remedy by its enlargement of the jurisdiction of the federal courts.

"14. * * * The facts in the instant case disclose that proceedings were pending in the state court for upwards of five years, during which time the property in question was being managed by a receiver; that the sum of $85,000 was paid in receiver's fees, and the sum of $31,500 was paid as attorneys fees for said receiver; that nothing was paid to the bondholders, and taxes in the sum of approximately $101,000 were allowed to accumulate, although the income from the property during said time amounted to approximately $2,557,000; that the plan of reorganization presented to the state court was rejected, and that the chancellor in charge of the case therein indicated his intention to continue the receivership for an indefinite period. Section 77B of the Bankruptcy Act was intended to afford relief from such intolerable conditions. * * *

"I, therefore, report and recommend that all petitions referred to me, seeking to vacate and set aside the order heretofore entered in this court, * * * be denied, and that said bondholders' protective committee be given leave to intervene herein and to present, without delay, a plan of rorganization of said properties.

"Dated March 19, 1935."

been injured thereby unless it be the bondholders themselves.

The debt here is not that of an individual who would have no standing under the provisions of section 77B, but it has at all times remained a corporate debt and the fact that an individual was holding the naked legal title to the premises for the use of the bondholders in no way brands it as individual property. The individual who thus held the nominal title owed no part of the debt and was in no position to invoke the benefits of section 74 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 202. No one could seriously challenge the right of the Davis Hotel Company to petition the court under the provisions of section 77B or the right of its bondholders to so petition had the original corporate debtor not parted with title to the property and assumed its present doubtful status, and Knickerbocker, we think, under the circumstances here disclosed and for the purpose of this proceeding, stands in the shoes of the original corporate debtor. There is no substantial difference in this respect except in name. We are dealing with the same property, the same corporate indebtedness, the same bondholders, and the same receivership spectre that produced thousands for the receiver but not one cent for the actual owners.

Appellants attach importance to the assertion that Knickerbocker was organized for the purpose of "going into bankruptcy." Formerly it might be said that "going through bankruptcy" was the expiring act of an insolvent corporate debtor, but this can no longer be said under the provisions of the amendment to the Bankruptcy Act now under consideration. Solvent debtors may avail themselves of the benefit of section 77B (see subsection (a), 11 U.S.C.A. § 207 (a). The act contemplates a plan of reorganization, performance of which calls for the continuation of the affairs of the debtor after the debtor and creditors have agreed upon extension, reduction, or modification of the debtor's obligations. To say that a debtor corporation was organized to "go into bankruptcy" fails, therefore, to carry the derision and contempt which counsel attribute to such statement when measured by the facts of this case and the objects sought to be accomplished.

The statute does not limit its application to corporations in existence at the time of its passage and the failure to exclude after-organized corporations is in keeping with its general purpose. The mere fact that Knickerbocker was so recently incorporated will not alone, when viewed in the light of the attendant circumstances of this case, prevent it from invoking the provisions of section 77B. Stripped of the equities with which this case abounds, a different situation would, however, be presented. "Good faith" is not defined in the act and no all-inclusive definition of "good faith" can be given, but each case must be measured by its own peculiar facts. Our recent decision In re North Kenmore Building Corporation, 81 F.(2d) 656 (decided January 31, 1936), and the cases there cited, are to be distinguished on the facts.

Courts of equity will not aid those who defraud or deceive, but search as we may the conduct of the bondholders throughout these proceedings we find nothing that would justify a court of equity in closing its doors to them. On the contrary, their unfortunate situation cries loudly for relief. Appellants disavow any thought that appellees have been guilty of any fraud involving moral turpitude, but steadfastly aver that the acts of appellees are fraudulent in law and for that reason import a lack of good faith. We cannot accept this view under the facts before us.

Other questions are raised by this appeal, but in the main they converge in the single question of whether the petition was properly filed and in good faith. This we have already answered in the affirmative.

The order of the District Court is affirmed.