WACHOVIA BANK AND TRUST COMPANY, Appellant,

v.

R. Kennedy HARRIS, Trustee of the Estate of Cabana Club Apartments, Inc., Appellee.

In the Matter of CABANA CLUB APARTMENTS, INC., Debtor.

No. 71–1441.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1971.

Decided Feb. 17, 1972.

Field, Circuit Judge, dissented and filed opinion.

Hubert Humphrey, Greensboro, N. C. (McLendon, Brim, Brooks, Pierce & Daniels, Greensboro, N. C., on the brief) for appellant.

Arthur O. Cooke, Greensboro, N. C. (Cooke & Cooke, Greensboro, N. C., on the brief) for appellee.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

WINTER, Circuit Judge:

When we affirmed the denial of a motion to dismiss the petition for reorganization under Chapter X of the Bankruptcy Act filed by Cabana Club Apartments, Inc. (Cabana), we observed "[a]fter the trustee has presented a plan it will be time enough to consider its merits and legality." Wachovia Bank and Trust Company v. Dameron, 406 F.2d 803, 806 (4 Cir. 1969). That time is now. The trustee has presented a plan which was approved by the referee, as the special master, and later approved by the district court with a slight modification. Notwithstanding the attack of Wachovia Bank and Trust

Company, the principal creditor, we affirm.

## I

The appeal is largely factual but we will be as concise as possible. The basic terms and conditions of the construction loan from Wachovia to Cabana, the commitment of Aetna Life Insurance Company (Aetna) to provide long-term financing, Wachovia's abortive attempt to declare the loan in default and to accelerate payment and the commencement of this Chapter X proceeding are set forth in our prior opinion and need not be repeated here. After we sustained the district court's denial of Wachovia's motion to dismiss the Chapter X petition for lack of good faith (i. e., impossibility of effecting a plan of reorganization), the trustee submitted a proposed plan. Two hearings were held by the referee, who then made detailed findings of fact and recommended that the plan be approved. The district judge conducted a nonevidentiary hearing with regard to Wachovia's objections. He concluded that the referee's findings were not clearly erroneous and he adopted them. He also concluded that the plan was fair, equitable and feasible and that it complied with § 216 of the Bankruptcy Act, 11 U.S.C.A. § 616. In approving the plan, he did so "with express reliance upon the understanding that the note of Wachovia . . . shall be paid in full within the twenty-year period set forth in the note." For practical purposes, the approval, couched as described, had the effect of modifying the plan slightly, in that the plan only required that Wachovia be repaid, over a twenty-year period, the total sum of $1,087,040.00, while the principal amount of its loan with 6% interest on the declining balance over a like period would total $1,087,932.00. Thus, the district judge effectively required that the additional sum of $891.21, over and above that required by the plan, be repaid within the twenty-year period.

The basic features of the plan are: (1) Cabana's sole stockholder would advance $50,000.00 to Cabana to enable it to pay unpaid construction costs immediately and in full and (2) cash on hand, future income from apartment rentals and a refund, required to be made by Wachovia to Cabana, of $6,400.00 paid to Wachovia to obtain the commitment from Aetna for long-term financing, would be used to pay overdue taxes immediately, and to pay the debt due Wachovia over a twenty-year period and the debt due a second mortgagee over the several year period within which it was due. There was substantial evidence of 95–100% continuous occupancy of Cabana's apartments since they were available for rent.

Overall, Wachovia seeks reversal of the order approving the plan because it contends the plan is not feasible, it does not adequately protect Wachovia's claim, and it improperly alters the terms and conditions of Wachovia's right to repayment, as well as fails to provide for repayment in full. We shall treat these various contentions collectively, stating additional facts only where it is necessary to place the arguments in context.

## II

Three aspects of the general contention that Wachovia's rights are adversely affected by the plan require discussion. First, it is said that the plan improperly fails to provide for immediate payment of the principal payments for thirteen months in 1967–68, which were due Wachovia under the loan agreement between the parties and the note given by the debtor, both as amended by subsequent agreement of the parties. It is true that the interest and principal payments for July, August and September were not made when due. Payment of at least the amount due in July, 1967, was, however, tendered by the debtor, but the tender was declined by Wachovia because it was asserting a default and acceleration of the entire loan balance, a position which has been determined to be utterly lacking in merit. Under the plan, these past due principal payments will be fully repaid over

the twenty-year period as well as additional principal payments and interest to become due so that, under the circumstances, we see no ground of just complaint. The modification of the plan by the district court to require payment of the additional sum of $891.21 within the twenty-year period answers Wachovia's second argument that it will not be paid in full.

■ Wachovia's third argument that the plan improperly extends the debtor's obligation to Wachovia over a twenty-year period does not persuade us. Admittedly, Wachovia does not generally make twenty-year loans of the type in this case. And when Wachovia purportedly made a twenty-year loan, it was contemplated by the parties that this would be a construction loan and that when construction was completed, the loan would be offered to Aetna, which was committed to take it if the debtor could offer good and merchantable title, free of mechanics' or materialmen's liens or claims, as security for the loan. But the fact is that Wachovia's subsidiary title company, acting pursuant to the policy of its Chicago principal, refused to guarantee the debtor's title because of unpaid construction claims, notwithstanding that under North Carolina law they did not constitute a prior lien on the property, N.C.G.S. § 44A–10 (1971 Supp.); and Wachovia did not formally tender the loan to Aetna, notwithstanding that Aetna had the option to waive the debtor's payment of all construction costs.

Although the loan agreement provided for Aetna's commitment to provide long-term financing (for which Cabana was required to pay a commitment fee of $6,400.00) and the parties contemplated that the commitment would be availed of when construction was complete, Wachovia's advance was in the form of a twenty-year loan, secured by a deed of trust, with the right of Aetna not to accept the long-term obligation if certain conditions were not met. Having bound itself under these conditions, Wachovia cannot complain that the plan places upon it a more onerous term than that which it selected as the term for the transaction, especially when Wachovia failed to make formal tender of the loan to Aetna. Certainly, the plan does not sufficiently depart from the agreement of the parties with respect to the term of the loan that Wachovia has just cause to complain. Indeed, Wachovia, if it concludes that the loan is in violation of its usual lending policy, may still find another lender to assume the obligation it took on for itself. Even if it does not, its advance is secured by a first lien.

### III

Wachovia's attack upon the feasibility of the plan is also multi-faceted. First, it is argued that Wachovia should not be required to refund the Aetna $6,400.00 commitment fee, and, subsidiary to this argument, that if the refund is not required, there will be insufficient funds to make the plan workable.

■ Although it is far from clear that the plan would be unworkable for lack of funds if the $6,400.00 is not refunded so as to make it available for creditors generally, we think that Wachovia should be required to make the refund. As the referee found, and his findings are fully supported by the evidence, Wachovia, Aetna's correspondent, selected Aetna as the prospective long-term lender. Cabana made no application to Aetna and, indeed, did not even initially know the identity of the "permanent" lender. Wachovia made no commitment to Cabana until the former had obtained a commitment from Aetna; and, as a condition of Wachovia's loan to Cabana, the latter covenanted not to accept permanent financing from any other source. While the commitment fee collected by Wachovia was remitted to Aetna, Wachovia, together with its subsidiary title company, contributed to Aetna's not assuming the loan, and thus contributed to the forfeiture of the commitment fee. In any event, Wachovia acted as agent for Aetna and, since Wachovia alone, by a formal tender of

the loan to Aetna, was the only one whose actions may have resulted in a return of the commitment fee by Aetna and it failed to make that tender, equitably, we think that Wachovia should refund the fee so as to make it a resource for payment of all of Cabana's debts.

■ Wachovia also argues, aside from the commitment fee, that Cabana's present assets, including cash on hand, and prospective rental income, will be insufficient to meet the payments contemplated to be made under the plan. Wachovia seeks to persuade us by constructing schedules of existing and prospective debts and future income to prove capital and income deficiencies. At the outset, we note that Wachovia's figures are suspect by the comparison of cash on hand as of December 31, 1970, with obligations, some of which will accrue later in time and others of which are not recoverable under applicable law, without taking into account rental income actually realized or to be realized in the intervening period. But it suffices to say that the referee and the district judge have found that the plan is economically feasible and we cannot say, after the review of their findings and the evidentiary support for their findings, that they are clearly erroneous. We are satisfied, especially with the high occupancy rate of the apartments since they have been available, the additional capital contributions to be made and the settlement of some disputed construction cost claims, that the plan is economically feasible.

## IV

We see no merit in Wachovia's contention that its rights are impaired because some more junior creditors will be paid in full immediately, or prior to full payment to Wachovia. Wachovia will, under the plan, be paid in full in twenty years. It has no right to more.

In its first appeal, Wachovia argued that this is not a proper Chapter X proceeding because Cabana has no public stockholders and no public debt. We consider the point impliedly decided adversely to Wachovia in the first appeal, and we decline to reconsider it.

■ Finally, we find utterly lacking in merit Wachovia's argument that the district judge approved the plan without sufficient consideration. Of course, the district judge was not bound to adopt the referee's report. In fact, he modified the proposed order in the one respect in which it was deficient. But the record is clear that the district judge gave full, conscientious consideration to Wachovia's numerous meritless objections. When the referee made eighty-seven paragraphs of detailed findings, there was no occasion for the district judge to prepare another complex and detailed opinion when he found that the referee was correct in almost all that he did.

Affirmed.

FIELD, Circuit Judge, dissenting:

Even if we assume the feasibility of the plan confirmed by the District Court and countenanced by the majority, it falls short of being fair and equitable as required by Sections 216 and 221 of the Bankruptcy Act, 11 U.S.C.A. §§ 616 and 621. It has long been recognized that the words "fair and equitable" are words of art, and in my opinion any plan that in effect compromises the rights of a senior creditor to accommodate junior creditors does not comport with the statutory standards. United States v. Key, 397 U.S. 322, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1969); Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939).

It runs counter to my judicial grain to see Mr. Silverman, the sole stockholder of Cabana, with an investment of only $400.00 equity capital in the debtor corporation, enlist the services of the court in a Chapter X proceeding to rewrite the entire series of financing agreements to which the debtor was a party, and force Wachovia into the posture of a long-term lender which plainly was not

contemplated by the parties and from which, understandably, Wachovia desires to extricate itself.

It is manifestly clear that the debtor was well aware of the fact that Wachovia was to provide only an interim construction loan and that the long-term financing was to come from Aetna and was contingent upon the debtor's fulfillment of the various conditions incident to the Aetna loan. The Consent to Corporate Action by the debtor corporation demonstrates that Mr. Silverman and his wife, as sole directors of the debtor, fully understood this arrangement. The Buy-and-Sell Agreement was clearly a tripartite agreement between Wachovia, Aetna and the debtor corporation, and it is inconceivable to me that Silverman, who executed this agreement on behalf of the debtor did not fully appreciate the financing arrangements set forth therein. As a matter of fact, in his testimony before the Referee, Silverman acknowledged that he was well aware of Aetna's posture in the financing pattern. The first condition specified in the Buy-and-Sell Agreement required that the debtor would complete the apartment project on or before February 15, 1967 " * * * free of mechanics' or materialmen's liens or claims * * *." It is undisputed that the debtor failed to meet this requirement and that construction claims in the aggregate of $52,000.00 were outstanding and unpaid on the operative date of the agreement and were still in default at the time the debtor's petition was filed in the District Court.

The majority repeatedly emphasizes that Wachovia in effect should be penalized for its failure to make a formal tender of the loan to Aetna since under the Buy-and-Sell Agreement Aetna had the option to purchase the loan even though less than all of the conditions had been met by the borrower. To seize upon this as the premise for such punitive treatment of Wachovia is utterly unrealistic. In its course of business with Aetna over a long period of years, Wachovia was well aware of the fact that Aetna would not accept the loan with the claims of the materialmen and construction lien holders outstanding and unpaid. Under these circumstances a formal tender of the loan by Wachovia to Aetna would have been a useless act. Certainly it is obvious that if there was any way possible to close the Aetna transaction, Wachovia would have done so and thereby obtained repayment of its construction loan. The ultimate inequity in the plan is the inclusion of the $6400.00 Aetna standby fee as a receivable from Wachovia. This amount was paid by Cabana to Aetna as earnest money on the loan commitment and was, of course, retained by Aetna when the permanent loan arrangement aborted as the result of the debtor's default in meeting the agreed conditions. In my opinion there is no justifiable basis in law or in fact to summarily tax this item to Wachovia as an incident to the plan.

Mr. Silverman was no naive babe-in-the-woods in his dealings with Wachovia and Aetna. From his own testimony before the Referee it would appear that he had engaged in several disastrous ventures of this type in Florida before coming to North Carolina and left a considerable number of disenchanted and frustrated creditors in his wake. The plight of the debtor corporation in the present case was the direct result of its failure to live up to the plain terms of its agreements with Wachovia and Aetna. The plan approved in this case may not be fair and equitable to Wachovia but it is assuredly a judicial windfall for Mr. Silverman.

I would reverse.