**In the Matter of NORTHLAND CON-STRUCTION CO., a corporation (Wisconsin), Debtor-Appellant.**

**No. 76–2252.**

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1977.

Decided July 26, 1977.

As Amended on Denial of Rehearing and Rehearing en banc Sept. 7, 1977.

Ralph A. Fine, Milwaukee, Wis., for debtor-appellant.

John D. Bird, Jr., Milwaukee, Wis., for appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and HOLDER, District Judge.*

TONE, Circuit Judge.

This is an appeal from the dismissal of a voluntary petition under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501, et seq. The District Court affirmed the finding of the bankruptcy judge that the debtor, admittedly a shell corporation which received property solely for the purpose of invoking Chapter X, did not meet the "good faith" requirements of § 146, 11 U.S.C. § 546, as interpreted by this court in In re Loeb Apartments, Inc., 89 F.2d 461 (7th Cir. 1937). We affirm.

The facts are not in dispute. The shopping center property that is the debtor's sole asset was purchased and developed in 1960 by two couples, Ace and Eva Bernstein and David and Mary Cunningham, acting as individuals. In 1964 they mortgaged the property to secure a note to respondent Penn Mutual Life Insurance Company for $800,000. It was agreed that in the event of default Penn Mutual would look only to the security for payment of the unpaid balance. A second loan of $50,000 was made on the same terms in 1966. Financial difficulties of the property's major tenant eventually led to a default on the Penn Mutual loan payments and to the commencement of foreclosure proceedings in July 1974. A foreclosure judgment was entered by a Wisconsin court on October 21, 1975 in the sum of $681,064.99, and a sheriff's sale was set for August 2, 1976, approximately two weeks after the expiration of the redemption period.

During the pendency of the foreclosure proceedings, the individual owners took steps to salvage their investment. Through Northland, a shell corporation which the Bernsteins had used in the past for real estate business, they solicited new tenants and expended a substantial sum in renovating and altering the premises. On June 1, 1976, in anticipation of the filing of a Chapter X petition, the property was transferred to Northland by quitclaim deed. At the same time, Ace Bernstein was also attempting to arrange a refinancing. The best offer he could obtain, however, was for only $300,000, an amount which Penn Mutual refused to accept in satisfaction of its foreclosure judgment. Thus, on July 1, 1976, Northland filed a petition for reorganization under Chapter X, thereby gaining an automatic stay of the state foreclosure proceedings.

In its petition, Northland stated that the mortgaged property was its sole asset and that its liabilities were limited to the mortgage itself and real estate taxes on that property, which were then in arrears. It also stated that the property had a potential value of $1,500,000, and that a foreclosure sale would yield less than a quarter of that amount. Arguing that its shareholders' equity would be completely wiped out if there was a liquidation, Northland proposed a plan of reorganization in which there would be "[a] temporary moratorium on the payment of principal; [a]ll rent monies [would be] applied to taxes, mortgage interest, mortgage principal, and mortgage arrearages, in that order; and [n]o rent monies would be used to pay compensation to any of debtor's officers or employees." After hearing evidence on the issue of good faith, the bankruptcy judge, in an opinion adopted by the District Court, dismissed the

* The Honorable Cale J. Holder, District Judge of the United States District Court for the Southern District of Indiana, is sitting by designation.

petition as not having been filed in good faith.

■ Under § 141, 11 U.S.C. § 541, the first determination to be made with respect to a Chapter X petition is whether or not it was filed in good faith. While § 146, 11 U.S.C. § 546, lists four instances in which good faith will be deemed lacking, the concept is a flexible one, which "enables the court to determine, on the particular facts presented, whether the financial, economic, and legal situation of the debtor is one within the contemplation of Chapter X." 6 *Collier on Bankruptcy* ¶ 6.07 at 1041, 1045 (14th ed. 1977).

■ Some courts have adopted the view that good faith can never exist when an individual[1] organizes a corporation solely for the purpose of obtaining relief under Chapter X, because that chapter "was enacted for the purpose of facilitating the reorganization and rehabilitation of going corporate businesses." *In re Metropolitan Realty Corp.,* 433 F.2d 676, 679 (5th Cir. 1970), *cert. denied,* 401 U.S. 1008, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971). *Mongiello Brothers Coal Corp. v. Houghtaling Properties, Inc.,* 309 F.2d 925 (5th Cir. 1962); *Milwaukee Postal Building Corp. v. McCann,* 95 F.2d 948 (8th Cir. 1938); 6 *Collier on Bankruptcy, supra,* ¶ 6.07 at 1048 n. 30. This court, however, has not adopted such an immutable rule. *In re Loeb Apartments, Inc., supra,* 89 F.2d 461. Compare *In re Knickerbocker Hotel Co.,* 81 F.2d 981 (7th Cir. 1936), with *In re North Kenmore Building Corp.,* 81 F.2d 656 (7th Cir. 1936). In *Loeb Apartments,* 89 F.2d at 463, on which the debtor here relies heavily, the

court outlined the test of good faith as follows:

"If it is obvious that a debtor is attempting unreasonably to deter or harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administrative expenses, statutory periods of redemption and unreasonable obstruction by minorities, incident too frequently, we are sorry to observe, to mortgage foreclosure, and to invoke the operation of the act in the spirit indicated by Congress in the legislation, namely, to attempt to effect a speedy efficient reorganization, upon a feasible basis, supported by more than two-thirds of all the creditors, good faith cannot be denied."

The petition in *Loeb Apartments* was perceived by this court as an effort to enable the majority of the creditors to effectuate a reorganization plan which a minority had succeeded in obstructing in lengthy proceedings in the state court. Unlike the petition in that case, the one before us seeks to delay and defeat the bona fide effort of the sole creditor (other than the tax collector) to realize upon its security and would impose on that creditor a long-range plan of delayed payments. This is not the kind of case which *Loeb Apartments* indicates is appropriate for relief under Chapter X. We therefore need not decide how much is left of *Loeb Apartments* in view of the enactment since that decision of Chapter XII, 11 U.S.C. § 801, *et seq.,* which permits real property arrangements for individuals.[2] See 6 *Collier on Bankruptcy, supra,* ¶ 6.07 at 1051–1053.

---

1. Contrary to a belated argument Northland advances before us, the fact that Penn Mutual agreed to look only to the security for payment of principal and interest did not constitute the individual owners here a corporation within the meaning of the definition of "corporation" in § 1(8) of the Bankruptcy Act, 11 U.S.C. § 1(8), which is applicable to Chapter X.

2. In this case, the debtor argues that Chapter XII was unavailable to the former individual owners, first, because they might have been unable to meet that chapter's insolvency requirements and, second, because, in order to

gain the relief sought, it would have been necessary for them to waive the non-recourse provision of the notes and mortgage. Northland's brief reveals an additional reason for the individuals' preference for Chapter X: in arguing that Chapter XII precedents do not apply to the "cram down" provisions of Chapter X, see text, *infra,* Northland notes that in Chapter XII creditor interests are paramount, while in Chapter X "the interests of both the creditors and the debtor [are balanced] in order to effectuate the debtor's continued operation and ultimate rehabilitation." [Brief at 25.]

■ Northland argues that, notwithstanding the differences between this case and *Loeb Apartments,* that case supports its position, because, like the debtor in that case, it is merely seeking one of the advantages Chapter X was intended to offer—protection of a viable business enterprise from unnecessary liquidation. The presence of such a purpose is not enough in itself to satisfy the requirement of good faith. We are satisfied that Congress did not intend that chapter to be used by individual debtors to avoid foreclosure in a case such as this, where there has been no showing of any need which a reorganization under Chapter X is ordinarily designed to serve. See *General Stores Corp. v. Shlensky,* 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550 (1956). As the bankruptcy judge said:

"No investigation of management or readjustment of financial structure is needed or contemplated. There has been no suggestion of any fresh contribution other than the continued utilization of the services of Bernstein and Cunningham and their organization, and the funds needed to make the premises suitable for use by the new tenants. The only reorganization plan mentioned is one of pure delay."

■ Moreover, even if this case otherwise satisfied the requirements of good faith, the debtor's position would be untenable, because the petition falls within § 146(3) of the Act, 11 U.S.C. § 546, which provides that "a petition shall be deemed not to be filed in good faith if—. . . (3) it is unreasonable to expect that a plan of reorganization can be effected; . . ." Unlike the debtor in *Loeb Apartments,* in which the requisite percentage of creditors had already approved a reorganization plan when the petition was filed, the debtor here must rely on the "cram down" provisions of Chapter X, §§ 179 and 216(7), 11 U.S.C. §§ 579, 616(7), to impose the plan on Penn Mutual, which has steadfastly asserted its opposition to any plan other than immediate payment in full. Northland concedes that it could not take advantage of these provisions if the bankruptcy judge was correct in finding that the corporation was insolvent. See § 179, 11 U.S.C. § 579. We cannot say that that finding was clearly erroneous. Northland argues that Ace Bernstein's uncontradicted testimony that the property had a potential value of $1,500,000 was conclusive. But the bankruptcy judge was not obliged to credit this testimony and could reasonably have been more impressed by the unsuccessful outcome of Bernstein's attempts to obtain refinancing.

Even if there were some equity remaining for Northland's shareholders, however, the "cram down" provisions of Chapter X would be inapplicable here. Section 179 requires approval by creditors holding two-thirds in amount of the claims of each class but excludes creditors whose claims have been fully protected under § 216(7), 11 U.S.C. § 616(7). Those provisions do not contemplate that a corporation's sole creditor (other than the tax collector) will not be allowed to vote on a plan. *Cf. In re Herweg,* 119 F.2d 941, 943 (7th Cir. 1941), interpreting similar provisions of Chapter XII:

"We do not understand that this section provides a substitute for an arrangement, nor that it contemplates dispensing with an arrangement when no creditors can be found to consent to it."

Accord, *Taylor v. Wood,* 458 F.2d 15 (9th Cir. 1972); *Meyer v. Rowen,* 195 F.2d 263 (10th Cir. 1952); *In re Hamburger,* 117 F.2d 932 (6th Cir.), *cert. denied,* 313 U.S. 572, 61 S.Ct. 959, 85 L.Ed. 1529 (1941).

The one case Northland cites in favor of its position, *Wachovia Bank & Trust Co. v. Harris,* 455 F.2d 841 (4th Cir.), *cert. denied,* 409 U.S. 844, 93 S.Ct. 47, 34 L.Ed.2d 84 (1972), is distinguishable. There the court held that the debtor corporation had not defaulted on its loan payments, and therefore the bank had had no right to accelerated payment. *Id.* at 843; see also the prior appeal in the same case, *Wachovia Bank & Trust Co. v. Dameron,* 406 F.2d 803 (4th Cir. 1969). Thus, requiring the bank to abide by the original terms of its note did not alter

its contractual rights.[3] In the case at bar, on the other hand, there is no question as to default, and Penn Mutual is clearly entitled to immediate payment in full of the accelerated debt. To compel it to accept payment over a period of years, while perhaps not an unconstitutional deprivation of property, as the bankruptcy judge thought, would at least be contrary to the policy of creditor protection embodied in § 179 of Chapter X and in this court's decision in *In re Loeb Apartments, Inc.*

For the foregoing reasons, the judgment of the District Court is affirmed.

AFFIRMED.

3. With the *de minimis* exception of three monthly payments which were not tendered when due, apparently by reason of the creditor's refusal of the tender of the preceding monthly payment "because it was asserting a default and acceleration of the entire loan balance, a position which has been determined to be utterly lacking in merit." 455 F.2d at 843. Under these circumstances, spreading those few past due payments over the 20 years provided in the note for payments to become due gave the creditor "no ground of just complaint." *Id.* at 844.