**In re John T. BULLINGTON, Debtor.**

**In re Donald H. BULLINGTON, Debtor.**

**Bankruptcy Nos. 87–10057–ALB, 87–10058–ALB.**

United States Bankruptcy Court, M.D. Georgia, Albany Division.

Dec. 18, 1987.

Amended Order Dec. 21, 1987.

Fife M. Whiteside, Columbus, Ga., for debtors.

Rufus T. Dorsey, IV, Atlanta, Georgia, for Travelers Ins. Co.

---

**15.** *See* 11 U.S.C.A. § 101(7) (West 1979).

Walter W. Kelley, Albany, Ga., Chapter 12 Trustee.

Robert L. Coley, Atlanta, Ga., U.S. Trustee.

## OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

The Debtors, John T. Bullington and Donald H. Bullington (hereinafter, Debtors), filed separate petitions under Chapter 12 on January 30, 1987. On May 1, 1987, the Debtors filed plans of reorganization. Travelers Insurance Company (hereinafter, Travelers) objected to both plans on the ground, among others, that confirmation of the plans as proposed would violate Travelers' constitutional rights under the Fifth Amendment of the United States Constitution. A confirmation hearing was conducted on June 10, 1987. Based on evidence presented at the hearing and arguments of counsel, the Court conditionally confirmed both of Debtors' plans, subject to certain modifications and the resolution of the constitutional issue after notice to the Attorney General of the United States pursuant to 28 U.S.C. Section 2403. The Department of Justice did not intervene. Travelers filed a motion to alter or amend the conditional confirmation order. A final hearing on confirmation was held on August 19, 1987. The parties have filed briefs with the Court and, having considered these and the evidence presented by the parties at the hearings on confirmation, the Court makes the following Findings of Fact and Conclusions of Law.

The Debtors are brothers and have farmed in an operation run as a farm partnership, although not treated as such for tax purposes, under the name of Bullington Farms. As originally operated, the farm partnership also included the Bullingtons' father, Thomas R. Bullington, who is now deceased. Bullington Farms operated the farm on approximately 926 acres in Wilcox and Crisp Counties in Georgia.

On February 6, 1985, the Bullingtons executed and delivered to Travelers a note for the principal amount of $520,000.00. The note was a short term obligation extending over five years to February 1, 1990. Under the terms of the note, the Bullingtons were to pay only interest on the indebtedness for the first four years on a bi-annual basis with the entire principal and any remaining interest due on February 1, 1990. For the first year, the interest rate was fixed at twelve and one-half per cent per annum; thereafter, the interest rate was to be adjusted on an annual basis.

In conjunction with their execution of the note, the Bullingtons also executed a loan deed dated February 6, 1985 in which they granted Travelers a first priority security interest in, lien upon and security title to approximately 478 acres in Wilcox County and 448 acres in Crisp County. The Bullingtons also jointly executed a security agreement dated February 6, 1985 in which they granted to Travelers a security interest in the pumps, motors, water control equipment, and other property owned by the Debtors and used in connection with improvements located on the real property.

The Debtors filed separate petitions for relief under Chapter 12 on January 30, 1987. John T. Bullington had scheduled secured claims of $1,042,500.00 and unsecured claims of $45,045.00 for total debts of $1,087,545.00. Donald H. Bullington had scheduled secured claims of $1,042,-500.00 and unsecured claims of $32,505.00 for total debts of $1,075,005.00. At the petition date Debtors were jointly and severally liable to Travelers in an amount in excess of $645,929.77. As modified and conditionally approved, the Debtors' plans proposed the following treatment of Travelers' claim:

1. The write-down of Travelers' secured claim to the amount of $475,000.00, which is the stipulated present value of the real property as of June 10, 1987. Debtors propose to surrender to Travelers all collateral in the form of personal property.

2. The repayment of $475,000.00 in 30 equal amortized annual installments with interest at 10.75%.

3. Travelers is allowed to retain its lien but ordered to execute all release documents deemed necessary by the Debtors

and to re-execute new documents in accordance with the reduced secured claim.

4. The remainder of Travelers' debt in the amount of approximately $170,000.00 is relegated to an unsecured claim for which the Debtors propose a payment of a pro-rata share of disposable income paid to the Trustee annually over three years.

Travelers' constitutional objection is that Chapter 12 as construed by this Court in regard to these plans impairs the secured creditor's rights in violation of the takings and due process clauses of the Fifth Amendment, and that to the extent that Chapter 12 is applied retroactively to Travelers' pre-existing lien and security interest, it is a violation of Travelers' Fifth Amendment rights. Travelers argues that retroactive application of Chapter 12 deprives Travelers of various rights that were protected by Chapter 11, which was Debtors' only available relief at the time Travelers acquired its lien interest. Travelers also believes that Chapter 12 requires that payments to secured creditors be completed within three years of confirmation of the plan, or within five years when sufficient cause is shown for a longer time period.

Chapter 12 was added to the Bankruptcy Code in 1986 to deal with family farm bankruptcies. It is modeled in many respects on Chapter 13. Chapter 12 provides relief to family farmers by eliminating the absolute priority rule of Chapter 11, found in 11 U.S.C. Section 1129(b)(2)(B)(ii). An unsecured creditor's objection can be overcome by a showing that either "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim," 11 U.S.C. Section 1225(b)(1)(A), or that "the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under Section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. 1225(b)(1)(B). Chapter 12 also has different requirements for adequate protection, 11 U.S.C. Section 1205, and it does not

include the secured creditor election allowed in Chapter 11 by 11 U.S.C. Section 1111(b). Chapter 12's requirements for confirmation over the objection of a secured creditor do not include Section 1129(b)(2)'s "fair and equitable" standards for receiving value or the "indubitable equivalent" of secured claims. 11 U.S.C. Section 1129(b)(2)(A). Chapter 12 was enacted on October 27, 1986 as part of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, and it took effect on November 26, 1986. The Chapter 12 legislation expires on October 1, 1993.

A presumption of constitutionality is afforded all legislation. *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983). "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

Article I, Section 8, Clause 4 of the Constitution vests in Congress the power "to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." The courts have construed the bankruptcy power broadly. "[I]t extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest is the discharge of a debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress." *In re Klein*, 14 Fed.Cas. No. 7,865, 716, 718 (Catron, Cir. Justice, C.C.D. Mo.1843), *quoted in Hanover National Bank v. Moyses*, 186 U.S. 181, 186, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902), and *In re Tanner*, 14 B.R. 933, 938 (Br.W.D.Pa.1981). The extensions of the bankruptcy power "demonstrate in a very striking way the

capacity of the bankruptcy clause to meet new conditions as they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to the present day. And these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed." *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, Rock Island & P. Ry. Co.*, 294 U.S. 648, 671, 55 S.Ct. 595, 604, 79 L.Ed. 1110 (1935). Bankruptcy legislation on discharge is held to be constitutional unless it is "so grossly unreasonable as to be incompatible with fundamental law." *Hanover Nat. Bank*, 186 U.S. at 192, 22 S.Ct. at 862.

■ The bankruptcy power is broad enough to permit modification of contractual rights. The modification of contractual rights in Chapter 13 has been held constitutional so long as there is no taking of a property interest represented by a secured claim. *See In re Powell*, 15 B.R. 465 (Br. N.D.Ga.1981). Travelers' rights have been modified here. The question "is whether the legislation modifies the secured creditor's rights, remedial or substantive, to such an extent as to deny the due process of law guaranteed by the Fifth Amendment." *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937) (Wright I).

The bankruptcy power is subject to the Fifth Amendment, which prohibits the taking of private property without due process of law. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935). A security interest is a property right. *U.S. v. Security Indus. Bank*, 459 U.S. 70, 76, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982). A secured creditor's property rights in the collateral, however, are not equivalent to his rights to specific remedies to enforce his claim, which amount to a contractual right. *See Security Indus.* at 75, 103 S.Ct. at 411; *Continental Ill.*, 294 U.S. at 680, 55 S.Ct. at 608. The impairment or modifi-

cation of contract rights under the bankruptcy power is not prohibited by the Fifth Amendment. "It may be said that Congress, while without power to impair the obligation of contracts by laws acting directly and independently to that end, undeniably, has authority to pass legislation pertinent to any of the powers conferred by the Constitution however it may operate collaterally or incidentally to impair or destroy the obligation of private contracts." *Continental Ill.* at 680, 55 S.Ct. at 608. Where contracts are modified, "[t]he test of constitutionality in this instance is whether the provisions of the Bankruptcy Code are so grossly arbitrary and unreasonable as to be incompatible with fundamental law." *In re Scales*, 10 B.R. 981, 985 (Br.N.D.Ga.1981). Travelers' contract rights have been modified but have not been so severely impaired as to constitute an impermissible taking under the Fifth Amendment.

The secured creditor's rights to enforcement of its claim are still protected in this case. Its lien is retained under 11 U.S.C. Section 1225(a)(5)(B)(i). It has the right to move for relief from the stay if there is a lack of adequate protection. 11 U.S.C. Sections 362(d), 1205. A case may be dismissed if payments under the confirmed plan are not commenced or if there is a material default, or if there is continuing loss to the estate and an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. Section 1208(c)(4), (6), (9). All of this is enough to protect Travelers' Fifth Amendment property rights to its security. There is no constitutional right to more than the value of the security. *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 278–79, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940) (Wright II).

The Frazier–Lemke Acts were also farm reorganization acts. The first Frazier–Lemke Act was held to be unconstitutional as an impermissible "taking" under the Fifth Amendment in *Louisville Joint Stock Land Bank v. Radford*. *Radford* listed five substantive rights in specific property which had been taken:

"(1) The right to retain the lien until the indebtedness thereby secured is paid.

"(2) The right to realize upon the security by a judicial public sale.

"(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

"(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt." ·

*Id* 295 U.S. at 594–95, 55 S.Ct. at 865–66. The constitutionality of the re-drafted second Frazier–Lemke Act was upheld in *Wright v. Vinton Branch of Mountain Trust Bank,* supra, which stated that "It was not held [in *Radford*] that the deprivation of any one of these rights would have rendered the Act invalid, but that the effect of the statute in its entirety was to deprive the mortgagee of his property without due process of law." *Id.* 300 U.S. at 457, 57 S.Ct. at 559. The second Act included Section 75, which stated in subsection 3 that "[a]t the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal...." The Supreme Court considered Section 75 in *Wright v. Union Central Life Ins. Co. Wright II* held that "Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property. [Citations omitted.] There is no constitutional claim of the creditor to more than that." *Id.* 311 U.S. at 278–79, 61 S.Ct. 199–200.

Other cases have elaborated on that statement. The bankruptcy powers "are adequate to require creditors to acquiesce in a fair adjustment of their claims, so long as the creditor gets all the value of his lien and his share of any free assets." *Reconstruction Finance Corp. v. Denver & Rio Grande W.R. Co.,* 328 U.S. 495, 533, 66 S.Ct. 1282, 1302, 90 L.Ed. 1400 (1946). If there is no equity for the secured creditor and the debtor is insolvent, the secured creditor can receive nothing. *In re 620 Church St. Bldg. Corp.,* 299 U.S. 24, 26–27, 57 S.Ct. 88, 89, 81 L.Ed. 16 (1936). If the debtor has no liability other than the security, the secured creditor can be required to accept the appraised value of the property in cancellation of its debt. *Matter of Pine Gate Assocs., Ltd.,* 2 B.C.D. 1478, 1491 (Br.N.D.Ga.1976). A mortgage may be voided to the extent it is unsecured without being an unconstitutional deprivation of property, since the result is the same as in foreclosure—the debtor receives only the value of the property. *In re Worrell,* 67 B.R. 16, 19 (C.D.Ill.1986); *In re Crouch,* 76 B.R. 91, 94 (Br.W.D.Va.1987); *In re Jones,* 64 B.R. 380 (Br.E.D.Pa.1986); *In re Tanner,* 14 B.R. 933, 938 (Br.W.D.Pa.1981).

Section 506(a) divides the secured creditor's claim into secured and unsecured parts. "An allowed secured claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..., and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." Section 1225(a)(5) requires that "with respect to each allowed secured claim provided for by the plan— ... (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim...." A Chapter 12 secured creditor is subject to the undersecured portion of his claim being treated as unsecured, so long as the secured portion is protected, just as in a Chapter 13 case. See *Jones* at 380; *In re Simmons,* 78 B.R.

300, 16 B.C.D. 708 (Br.D.Kan.1987.) Chapter 12 requires that the creditors receive at least as much as they would under a Chapter 7 liquidation. 11 U.S.C. Section 1225(a)(4). Travelers has no constitutional right to a deficiency judgment, only the right to the value of its security.

Travelers has also contended that the retroactive application of Chapter 12 to its pre-existing lien and security interest violates its Fifth Amendment rights, relying primarily on *U.S. v. Security Indus. Bank,* supra. *Security Indus.* held that the lien avoidance provisions of Section 522(f) would not be applied retroactively to destroy property rights predating the enactment of the Bankruptcy Code. The constitutional issue in *Security Indus.* was the complete destruction of the secured creditor's property interest, its lien. The court distinguished Section 522(f) lien avoidance cases from cases involving restrictions on only "some but not all of the 'bundle of rights' which constitute the 'property' in question." *Security Indus.,* 459 U.S. at 75–76, 103 S.Ct. at 411. In *Radford* also, the chief concern of the court was the retroactive destruction of the secured creditor's lien. *Radford,* 295 U.S. at 589–91, 55 S.Ct. at 863–64.

*Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, Rock Island & P. Ry. Co.,* 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935), and *Canada Southern Ry. Co. v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883), both allowed the retroactive impairment of secured creditors' rights in their collateral, railroad bonds. *Continental Illinois* involved the enjoining of sale of mortgage bonds by note holders under a new 1933 railroad reorganization statute. *Canada Southern* involved a Canadian statute, the "Canada Southern Arrangement Act," enacted to require exchange of security bonds, and held to be "not in conflict with the constitution of the United States...." *Canada Southern,* 109 U.S. at 539, 3 S.Ct. at 371. Nothing in *Security Indus.* or *Radford* purported to overrule the pre-*Radford* cases that upheld retroactive bankruptcy legislation impairing rights of secured and unsecured creditors.

Courts before the enactment of Chapter 12 had held that contract rights could be modified and that the secured creditor's only Fifth Amendment property right was the value of the security. Section 506(a) and (d) had been available to Chapter 13 debtors to sever the secured and unsecured portions of a secured claim and to void the lien of the unsecured portion. *See Jones* at 380. The secured creditor's only legitimate expectation was to get the value of its security, and Travelers is getting that. The deficiency is only a contract right which had by earlier cases been marked as a proper area for restriction by bankruptcy legislation. Travelers' claims of reliance on Chapter 11 rights are not compelling. "The act must be liberally construed to give the debtor the full measure of the relief afforded by Congress ..., lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act." *Wright II,* 311 U.S. at 279, 61 S.Ct. at 200.

"A retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' " *Union Pacific R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913), *quoted in Security Industrial,* 459 U.S. at 79, 103 S.Ct. at 413. Chapter 12 was obviously intended to have retroactive effect. It was meant to deal with the crisis situation facing family farmers. The Family Farmer Bankruptcy Act of 1986 contains a 7–year sunset provision. Bankruptcy Judges, United States Trustees & Family Farmers Bankruptcy Act of 1986, Section 302(f). A declaration that the Act is only prospective in its application would in effect invalidate Chapter 12. Congress would have no means of helping any of the distressed farmers the Act was meant to help. Chapter 12 cannot be interpreted as having been intended to have only prospective effect. This Court concludes that there is ample authority to support the constitutionality of retroactive application

of Chapter 12 to Travelers' security interest.

 Travelers has also filed a motion to alter or amend the confirmation orders, claiming that the payment of Travelers' secured claim over 30 years does not comply with the requirements of 11 U.S.C. Section 1225(a)(5)(B). Travelers asserts that the required payment "under the plan" of Section 1225(a)(5)(B)(ii) means that proposed deferred payments must be completed within 3 years, or 5 years if the court finds cause to extend the time for payment. That is incorrect. "Under the plan" does not necessarily mean within the 3 or 5 years of the Chapter 12 plan. Section 1222(b)(5) and (9) allow the plan to extend repayment terms for secured claims for periods of time that the court finds to be reasonable. Section 1222(b)(5) allows the curing of defaults "within a reasonable time" on secured claims "on which the last payment is due after the date on which the final payment under the plan is due." Section 1222(b) states that "the plan may— ...(9) provide for payment of allowed secured claims consistent with Section 1225(a)(5) of this title over a period exceeding the period permitted under Section 1222(c)," which restricts the time for payments to 3 years (or 5 years with court approval), "except as provided in subsections (b)(5) and (b)(9)." As long as the secured creditor's lien is retained under Section 1225(a)(5)(B), the debtor is only required to pay the value of the collateral as the allowed secured claim, as discussed previously.

Payments of secured claims have been extended in other chapters over long periods of time. Chapter X and XII cases under the Bankruptcy Act allowed payments on secured real estate over 20 years, even where secured creditors did not generally make long-term loans, so long as interest was paid and the security was not depreciating. *See Wachovia Bank & Trust Co. v. Harris*, 455 F.2d 841, 844 (4th Cir. 1971); *In re Benson*, 9 B.R. 854, 858 (Br.N. D.Ill.1981); *Matter of KRO Associates*, 4 B.C.D. 467, 471 (Br.S.D.N.Y.1978). "Wachovia will, under the plan, be paid in full 20 years. It has no right to more." *Wachovia* at 845. The Court has determined that, in this case, 30 years for payment of Travelers' secured debt is a reasonable period of time. Because the security is real property, there will not be the same likelihood of depreciation as with personal property, which loses much of its value in relatively short periods of time. The Court has determined the feasibility of the plan, and the rate of interest set is sufficient to fully compensate Travelers for the value of its security.

This Court concludes that Chapter 12 of the Bankruptcy Code does not violate the Fifth Amendment of the United States Constitution, either as written or as applied to these Chapter 12 reorganization plans. Travelers will receive the value of its security, which is all that it is entitled to under Chapter 12 and under the Constitution. The retroactive application of Chapter 12 to this debt incurred prior to the enactment of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 is not in violation of the Constitution, since Travelers is retaining its lien and receiving the value of its security. This is the limit of Travelers' reasonable expectations of protection of its property interest. The debtors are also entitled to extend payment of this secured debt over 30 years under Chapter 12. The intent of Congress in enacting Chapter 12 was to help financially distressed family farmers like these debtors. Orders will be entered in accordance with this Opinion.

## AMENDED ORDER

In accordance with the Opinion filed December 18, 1987, the Court finds Chapter 12 of the Bankruptcy Code to be constitutional. The objections of Travelers Insurance Company to confirmation of the Plan are overruled and its motion to alter or amend the Order of Confirmation is denied. The order confirming the Chapter 12 Plan entered in this case on June 19, 1987 nunc pro tunc to June 15, 1987 is finally approved.