Eugene ALBAUGH, Appellant–Creditor,

v.

William Douglas TERRELL and Tammy Lynn Terrell, Appellants–Debtors.

No. 87–CV–10277–BC.
Bankruptcy No. 87–09087.

United States District Court, E.D. Michigan, N.D.

Nov. 15, 1988.

Peter S. Shek, Saginaw, Mich., for plaintiff-creditor Eugene Albaugh.

Ralph I. Selby, Baker and Selby, Bay City, Mich., for defendants-debtors William Douglas Terrell and Tammy Lynn Terrell.

J. Christopher Kohn, Tracy J. Whitaker, Torrence R. Thomas, Jr., Attys., Civ. Div., Dept. of Justice, Washington, D.C., for intervening party—U.S. Dept. of Justice.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

In this appeal from a United States Bankruptcy Court proceeding, Creditor Eugene Albaugh has challenged the confirmation of the debtors' first amended Chapter 12 plan by contending that 11 U.S.C. § 1225(a)(5) violates the Fifth Amendment. Because the Court finds § 1225(a)(5) to be constitutionally sound, the Court shall uphold United States Bankruptcy Judge Spector's confirmation of the debtors' amended plan.

### I. The Factual Setting

In 1982, Creditor Eugene Albaugh sold a parcel of farmland to William and Tammy Terrell ("the Terrells") on a land contract. Under the terms of the land contract, the Terrells were obligated to pay Albaugh a total of $252,000, with $226,800 in installments to be made over a period of years. The Terrells, however, encountered hard times financially and sought protection under the Family Farmers Bankruptcy Act of 1986 ("Chapter 12"), Pub.L. No. 99-554, § 255, 100 Stat. 3105-3114 (codified at 11 U.S.C. §§ 1201-1231). At that point in 1987, the Terrells had reduced their outstanding balance on the land contract to $214,780 while the farmland serving as security had diminished in value from approximately $250,000 to $160,000.

The Terrells submitted a proposed Chapter 12 plan, which United States Bankruptcy Judge Spector rejected after a confirmation hearing held on June 12, 1987. Soon thereafter, the Terrells filed a first amended Chapter 12 plan and Judge Spector evaluated the amended plan in a confirmation hearing on July 24, 1987. By written order dated August 28, 1987, Judge Spector confirmed the revised proposal notwithstanding the inclusion of a provision that Credi-

tor Albaugh is to receive a secured claim in an amount less than the $214,780 balance due on the land contract. According to the terms of the amended plan, Albaugh is entitled to a secured claim for $160,000, the appraised value of the land as of the effective date of the amended plan.[1] Debtor's [sic] First Amended Chapter 12 Plan, Art. IV(B); see also Order Confirming First Amended Chapter 12 Plan, ¶ 5.

Creditor Albaugh, dissatisfied with the reduction of his secured claim under the amended plan, appealed the confirmation decision to this Court. Cf. 28 U.S.C. § 158(a). The Court dispensed with all of Albaugh's assertions of error in a February 19, 1988 order, but reserved the constitutional attack on 11 U.S.C. § 1225(a)(5) to afford the Attorney General an opportunity to intervene.[2] See 28 U.S.C. § 2403. The Attorney General has since filed a brief in support of constitutionality, and the Court heard argument from the parties and the Justice Department in July of 1988. As all parties agree, the sole impediment to confirmation at this point is Creditor Albaugh's attack on the constitutionality of § 1225(a)(5).

### II. The Mechanics of 11 U.S.C. § 1225(a)(5)

The Family Farmers Bankruptcy Act of 1986 "creates a new Chapter 12 bankruptcy proceeding, under which family farmers can retain an equity interest in their farms while making loan repayments under a reorganization plan." Norwest Bank Worthington v. Ahlers, 485 U.S. ——, ——, 108 S.Ct. 963, 970, 99 L.Ed.2d 169, 181 (1988). In allowing farmers to retain equity interests in land holdings, Chapter 12 concomitantly provides protection to secured creditors for their unsatisfied claims. See H.R. Conf.Rep. No. 958, 99th Cong., 2d Sess. 48,

---

1. Creditor Albaugh's proof of claim contemplates a balance of $200,000. See Confirmation Hearing Transcript at 96–97 (June 12, 1987). Judge Spector determined as a matter of fact that "the property is worth $160,000." Id. at 96; see also Transcript of Hearing on Amended Plan at 74 (July 24, 1987). Thus, Judge Spector divided Creditor Albaugh's claim into a $160,000 secured claim under the amended plan and a

$40,000 unsecured claim. See Confirmation Hearing Transcript at 96 (June 12, 1987).

2. Although Creditor Albaugh raised his constitutional claim for the first time on appeal, the Court decided to entertain this "purely legal" issue "to avoid a [possible] miscarriage of justice." See, e.g., In re Goff, 812 F.2d 931, 933 (5th Cir.1987).

*reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5246, 5249. Specifically, while a secured creditor "does not have an absolute veto power over confirmation" of a Chapter 12 plan, *cf. In re Rhoades*, 34 B.R. 164, 165 (Bankr.D.Vt.1983) (analyzing 11 U.S.C. § 1325(a)(5)), § 1225(a)(5) offers three alternatives for treatment of "each allowed secured claim provided for by the [Chapter 12] plan[.]" *See* 11 U.S.C. § 1225(a)(5). If a secured creditor refuses to accept a proposed Chapter 12 plan and the debtor refuses to surrender the property securing the claim, *id.* § 1225(a)(5)(A) & (C), the bankruptcy court *cannot* confirm the proposed Chapter 12 plan unless the plan permits retention of a lien securing the claim and provides for payment under the plan commensurate with the value of the property securing the claim. *Id.* § 1225(a)(5)(B)(i) & (ii); *see also In re Kloberdanz*, 83 B.R. 767, 769 (Bankr.D.Colo. 1988). Nevertheless, Creditor Albaugh argues that reduction of his secured claim to the actual value of the security, which is permissible under § 1225(a)(5)(B),[3] violates the Fifth Amendment. This, of course, depends upon the rights to which an undersecured creditor is entitled in the case of bankruptcy.

### III. Fifth Amendment Requirements and § 1225(a)(5)

Creditor Albaugh's contention that § 1225(a)(5) violates the Fifth Amendment hinges on his right to a secured claim in excess of the value of the property securing his claim as determined by the bankruptcy court. To ascertain the constitutionally required amount of Albaugh's secured claim, the Court must evaluate several seemingly inconsistent United States Supreme Court decisions. If Albaugh is correct in reading the applicable Supreme Court precedent as mandating more than

he has received under the amended plan in the case at bar, the Court must declare § 1225(a)(5) unconstitutional, and by implication also recognize that 11 U.S.C. § 1325(a)(5) is constitutionally unsound. *Compare* 11 U.S.C. § 1225(a)(5) *with id.* § 1325(a)(5); *see also In re Snider Farms, Inc.*, 79 B.R. 801, 806 (Bankr.N.D.Ind.1987) (using § 1325(a)(5) legislative history to interpret § 1225(a)(5)). If, on the other hand, undersecured creditors are entitled to secured claims no greater than the value of their security, *see* 11 U.S.C. § 1225(a)(5)(B)(ii), then § 1225(a)(5) cannot be discarded as constitutionally flawed.

### A. Fifth Amendment Limits on Secured Claims

The Constitution grants Congress the power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States," U.S. Const. art. I, § 8, cl. 4, but this power is circumscribed by the Fifth Amendment's proscription of "the taking of substantive rights in specific property" without due process of law. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589–90, 55 S.Ct. 854, 863–64, 79 L.Ed. 1593 (1935). In *Radford*, the Supreme Court illuminated the Fifth Amendment constraints on the Article I bankruptcy power by enumerating five distinct rights to which a secured creditor is entitled in a bankruptcy proceeding:

1. The right to retain the lien until the indebtedness thereby secured is paid.

2. The right to realize upon the security by a judicial public sale.

3. The right to determine when such sale shall be held, subject only to the discretion of the court.

4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property de-

---

**3.** Creditor Albaugh also argued on appeal that he, as a land contract vendor, should be regarded as legally distinguishable from a typical undersecured creditor. The Court rejected this argument in its prior opinion, choosing instead to conceptualize a land contract vendor as precisely analogous to a secured creditor. *See In re Britton*, 43 B.R. 605, 607 (Bankr.E.D.Mich.1984) ("The better view is that in Michigan the vendor

of real estate under a land contract retains title as a lien on the property to secure payment of the purchase price."); *cf. In re Arnold*, 806 F.2d 937, 940 (9th Cir.1986) (allowing Chapter 11 cram down that reduced land contract vendor's claim to "current appraised value of the parcels" sold by land contract and left vendor with mere liens).

voted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

*Id.* at 594–95, 55 S.Ct. at 865–66. Under the *Radford* formulation, debtors are entitled to virtually no protection vis-a-vis their secured creditors. Indeed, *Radford* afforded only modest discretion to courts in regulating the manner in which secured creditors exercise their rights as derived from the Fifth Amendment. If *Radford* in its undiluted form were an accurate statement of Fifth Amendment limits on the bankruptcy power today, Chapter 12 almost certainly would be rejected in the same manner as the original Frazier–Lemke Act that the *Radford* Court jettisoned on Fifth Amendment grounds.

The Supreme Court, however, eschewed the strict limits of *Radford* in a series of decisions that almost imperceptibly reduced *Radford* to a single overarching rule—secured creditors are constitutionally entitled to no more than protection for the value of their security. Several years after the *Radford* decision was handed down, the Supreme Court interpreted *Radford* as expressly rejecting the notion "that the deprivation of any one of [the five *Radford*] rights would have rendered the [original Frazier–Lemke] Act invalid[.]" *See Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, Virginia,* 300 U.S. 440, 457, 57 S.Ct. 556, 559, 81 L.Ed. 736 (1937). Rather, the *Vinton Branch Bank* Court concluded that the *Radford* Court struck the original Frazier–Lemke Act only because "the effect of the statute *in its entirety* was to deprive the mortgagee of his property without due process of law." *Id.* (emphasis added). Thus, the *Vinton Branch Bank* case clearly signalled a departure from the strictures of *Radford*'s five rights.

In 1940, the Supreme Court completed its departure from *Radford*'s strict limits in *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), *reh'g denied,* 312 U.S. 711, 61 S.Ct. 445, 85 L.Ed. 1142 (1941). The *Union Central* case addressed the narrow issue of whether a debtor "must be accorded an opportunity, on his request, to redeem [his] property at the *reappraised* value or at a value fixed by the court before the court may order a public sale." *Id.* at 275–76, 61 S.Ct. at 198 (emphasis added). Writing for the *Union Central* Court, Justice Douglas concluded that "the denial of an opportunity for the debtor to redeem at the value fixed by the court before ordering a public sale was error." *Id.* at 277, 61 S.Ct. at 199. The *Union Central* decision reflects no concern for the *Radford* rights; Justice Douglas simply reasoned that "[s]afeguards were provided to protect the rights of secured creditors ... to the *extent of the value of the property.* There is no constitutional claim of the creditor to more than that." *Id.* at 278, 61 S.Ct. at 199–200 (emphasis added). In this respect, *Union Central* fashioned a rule of law that differs radically from the Court's earlier pronouncement in *Radford.* If the *Union Central* Court had any misgivings about its decision that the Fifth Amendment's limitations have no application above and beyond the actual appraised value of the property securing the claim, these concerns are not evident in the text of the opinion. Applying *Union Central,* then, 11 U.S.C. § 1225(a)(5) is not constitutionally flawed if it "protect[s] the rights of secured creditors, throughout the proceedings, to the extent of the value of the property" securing their claims. *See Union Central,* 311 U.S. at 278, 61 S.Ct. at 199–200.

B. Recent Interpretations of Undersecured Creditors' Rights

Based on the apparent incongruity of Supreme Court precedent concerning the Fifth Amendment's requirements, analysis of recent treatment of undersecured creditors' rights is useful in defining the limits of the Fifth Amendment in bankruptcy proceedings. On this score, the Supreme Court's decision in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), strongly suggests that *Union Central,* rather than *Radford,* pro-

vides the proper Fifth Amendment standard. In *Timbers of Inwood,* a unanimous Supreme Court held that undersecured creditors are not "entitled to compensation under 11 U.S.C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral." *Id.* at ——, 108 S.Ct. at 629, 98 L.Ed.2d at 747. In the course of reaching this decision, Justice Scalia made several observations that are cogent in the context of the case at bar. Reasoning that "the 'interest in property' protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure," *id.* at ——, 108 S.Ct. at 630, 98 L.Ed.2d at 748, the *Timbers of Inwood* Court implicitly rejected *Radford*'s position that secured creditors enjoy the right "to realize upon the security by a judicial public sale" at the time of their choosing based on the Fifth Amendment. *See Radford,* 295 U.S. at 594, 55 S.Ct. at 865 (rights 2 & 3). Moreover, Justice Scalia's interpretation of the " 'value of such creditor's interest' in § 506(a) [as] 'the value of the collateral,' " *Timbers of Inwood,* 484 U.S. at ——, 108 S.Ct. at 630, 98 L.Ed.2d at 749, belies the contention that the Fifth Amendment entitles secured creditors to more than the value of the property securing their claims. Thus, both the text and the holding of *Timbers of Inwood* offer strong support for *Union Central*'s less expansive interpretation of Fifth Amendment requirements. Accordingly, the Court shall scrutinize § 1225(a)(5) in terms of the *Union Central* formulation of undersecured creditors' Fifth Amendment rights.

### IV. Fifth Amendment Analysis of § 1225(a)(5)

In light of the Court's decision that *Union Central,* rather than *Radford,* provides the standard for constitutional analysis of 11 U.S.C. § 1225(a)(5), the Court finds that § 1225(a)(5) passes constitutional muster.[4] *See In re Bullington,* 80 B.R. 590 (Bankr. M.D.Ga.1987), *aff'd,* 89 B.R. 1010 (M.D.Ga. 1988). By its own terms, § 1225(a)(5) mandates protection of undersecured creditors' claims to the extent of the value of property securing their claims. *See* 11 U.S.C. § 1225(a)(5)(B)(ii). Also, § 1225(a)(5) ensures that objecting undersecured creditors retain liens to secure their claims. *See id.* § 1225(a)(5)(B)(i). Because § 1225(a)(5) affords undersecured creditors both the value of their security and lien protection, Chapter 12 provides undersecured creditors with all that the Fifth Amendment requires.[5] *See Union Central,* 311 U.S. at 278, 61 S.Ct. at 199–200; *see also Bullington,* 80 B.R. at 594–95. The Court shall enter an appropriate order affirming confirmation of the debtors' first amended Chapter 12 plan.

---

**4.** In further support of his constitutional argument, Creditor Albaugh contends that Chapter 12 contravenes the Fifth Amendment because it does not include an 11 U.S.C. § 1111(b) option. This argument is specious in that it presumes that constitutionality is a relative, rather than an absolute, concept. Moreover, the Supreme Court has indicated that rights arising under the Bankruptcy Code do not rise to the level of constitutionally protected interests. *See United States v. Kras,* 409 U.S. 434, 445, 93 S.Ct. 631, 637–38, 34 L.Ed.2d 626 (1973). In any event, the Court cannot declare Chapter 12 unconstitu-

tional simply because it does not provide all of the options available under Chapter 11.

**5.** Creditor Albaugh's argument that Chapter 12 can only be applied prospectively, which he suggests as an alternative basis for attacking confirmation, need not be addressed in any detail. Quite simply, mere prospective application of the Act "would in effect invalidate Chapter 12." *Bullington,* 80 B.R. at 595. Limitation of Chapter 12 by mere prospective application would be both unwarranted and unnecessary. *See id.*