Melvin L. and Elaine A. DAHLKE

v.

Norman O. DOERING.

Civ. No. 4–87–753.
Bankruptcy No. 4–87–1332.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 10, 1989.

Ronald Groth, Thomson, Walfors, Moran & Groth, Minneapolis, Minn., for appellants Melvin L. and Elaine A. Dahlke.

Curtis L. Reese, Selander & Reese, Olivia, Minn., for appellee Norman O. Doering.

Jerome G. Arnold, U.S. Atty., and Roylene A. Champeaux, Asst. U.S. Atty., Minneapolis, Minn., and John R. Bolton, Asst. Atty. Gen., J. Christopher Kohn, Tracy J. Whitaker, and Torrence R. Thomas, Jr.,

Department of Justice, Washington, D.C., for intervenor United States.

## ORDER

ROSENBAUM, District Judge.

This bankruptcy appeal involves two farming families and a federal statute designed to help adjust the economic realities confronting American farmers. Appellants (hereinafter the Dahlkes) appeal from an order, dated July 13, 1987, entered by the Honorable Margaret A. Mahoney, United States Bankruptcy Judge, confirming a Chapter 12 reorganization plan.

The Dahlkes, by contract for deed, sold a farm to appellee (hereinafter Doering). At the time of the bankruptcy, the unpaid balance on the contract for deed stood at $124,000. Under the plan, the balance on the contract for deed was reduced from $124,000 to $75,000. The Dahlkes argue that this reduction in value under the plan constitutes a taking in violation of the fifth amendment. They also argue that Chapter 12, 11 U.S.C. § 1201, *et seq.*, passed after the farm's sale, may not be applied retroactively to the sale of their farm and the resulting contract for deed.

### Background

From 1947 to 1962, and again from 1973 to 1978, the Dahlkes owned and operated a family farm near Browntown, Minnesota. Transcript of Chapter 12 confirmation hearing (hereinafter Tr.) 153. In 1978, they sold the farm to Doering by contract for deed. Tr. 155. The original contract price was $230,400. Appellants' Exhibit 3. The contract called for annual installments of nearly $6,300 with a balloon payment for the unpaid balance due March 1, 1988. *Id.,* Tr. 159. Doering made timely payments until March of 1987. Tr. 159–60. In April of that year, he filed a Chapter 12 petition and schedule, later submitting his proposed plan. At the time of the March, 1987, default, the contract for deed's principal balance approximated $124,000, plus accrued interest.

The bankrupt's plan was to adjust the face value of the contract for deed, and with it the Dahlkes' secured claim, to the 1987 fair market value of $75,000. Tr. 125. The balloon payment would be adjusted to come due on December 1, 1997. The amount remaining under the original contract would become unsecured. In all other respects the original contract for deed was to remain intact. The Dahlkes opposed the plan and claimed Chapter 12 was unconstitutional as it applied to their contract.

The plan was approved by the bankruptcy court on July 13, 1987. The bankruptcy court declined the Dahlkes' invitation to hold Chapter 12 unconstitutional. The modification of the secured claim was held to be in accord with the confirmation requirements of 11 U.S.C. § 1225(a)(5). Tr. 174–77. The Dahlkes now urge this Court to find Chapter 12 unconstitutional, in violation of the fifth amendment, and to hold Chapter 12's provisions inapplicable to the 1978 sale of their farm.

### Discussion

■ The bankruptcy court's decision regarding the validity of Chapter 12 is clearly a question of law. On review, this Court considers questions of law *de novo. In re Pierce,* 809 F.2d 1356, 1359 (8th Cir.1987); *In re Martin,* 761 F.2d 472, 474 (8th Cir. 1985). Under the *de novo* standard, this Court "must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge." *Matter of Hammons,* 614 F.2d 399, 403 (5th Cir. 1980).

Chapter 12 of the Bankruptcy Code was drafted in 1986, specifically for family farmers. In Chapter 12, Congress sought to alleviate many of the difficulties perceived to be inherent in regular Chapter 11 bankruptcy proceedings.[1] *Norwest Bank Worthington v. Ahlers,* —— U.S. ——,

---

1. For a detailed discussion of these concerns, see Armstrong, *Family Farmer Bankruptcy Act of 1986,* 104 Banking L.J. 189, 190 (1987). *See also* Anderson & Rainach, *Farmer Reorganizations Under the New Bankruptcy Code,* 28 Loyola L.Rev. 439 (1982) (description of inadequacies of the Bankruptcy Code prior to enactment of Chapter 12).

———, 108 S.Ct. 963, 970, 99 L.Ed.2d 169, 181 (1988); *see* 132 Cong.Rec. S15075, S15075 (daily ed. Oct. 3, 1986) (statement of Senator Thurmond). The chapter is intended to make it easier for farmers to confirm reorganization plans and to insure equitable reimbursement to farm lenders. H.R.Conf.Rep.No. 958, 99th Cong., 2d Sess. 45, 48 (hereinafter H.R.Conf.R.), *reprinted in* 1986 U.S.Code Cong & Admin.News 5227, 5246, 5249 (hereinafter USCCAN).

The provisions of 11 U.S.C. § 1225 are at issue in this dispute.[2] Simply put, § 1225(a)(5) permits confirmation of a plan in one of three ways; first, if the creditor accepts its terms; second, if the debtor chooses to surrender the property securing the claim; or, third, upon the creditor's objection or refusal to surrender, the court may still confirm the plan if the plan permits retention of a lien securing the claim and provides for payment pursuant to the plan in an amount equal to the value of the collateral securing the claim. 11 U.S.C. § 1225(a)(5)(B)(i) and (ii); *see In re Kloberdanz*, 83 B.R. 767, 769 (Bankr.D.Colo.1988).

The Dahlkes offer a double-barrelled challenge to application of Chapter 12 to their secured interest. First, they suggest that the adjustment of their secured interest to the value of the secured property is a substantive violation of the fifth amendment. Second, the Dahlkes contend that Chapter 12, passed in 1986, cannot be applied retroactively to a loan consummated in 1978. The Court addresses these arguments individually.

## I. The Claimed "Taking"

■ The Dahlkes' challenge to this plan implicates two potentially conflicting constitutional provisions. In Article I, section 8, the Constitution grants to Congress the power to create "uniform laws on the sub-

ject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8. At the same time, the fifth amendment provides that "private property [shall not] be taken ... without just compensation." U.S. Const. amend. V. These provisions clash because "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935) (footnote omitted).

The Court must attempt to resolve the question of the extent to which the takings clause limits the restructuring of a secured creditor's rights in a bankruptcy reorganization. *See* Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship Between the Fifth Amendment and the Bankruptcy Clause*, 96 Harv.L.Rev. 973, 974 (1983). This resolution necessitates a review of seemingly conflicting Supreme Court cases.

A fifth amendment limitation on the bankruptcy power was first considered in *Louisville Joint Stock Land Bank v. Radford*. In *Radford*, the Supreme Court held that the Frazier–Lemke Act,[3] passed in 1934, effected an unconstitutional taking of property without just compensation. *Radford*, 295 U.S. at 601–602, 55 S.Ct. at 869. The Frazier–Lemke Act arose out of the farmers' plight during the Great Depression. The Act limited the farm property foreclosure rights of secured lenders. The Supreme Court held that statutes such as the Frazier–Lemke Act, which affected the rights of secured parties, were constitutional only if they preserved lienholders' rights to obtain payment of underlying debts through the sale of encumbered property. *Id.*, 295 U.S. at 601–602, 55 S.Ct. at 869.

2. Section 1225 provides, in relevant part, that
[T]he court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed *amount of such claim;* or
(C) the debtor surrenders the property securing such claim to such holder;....
11 U.S.C. § 1225(a)(5).

3. Pub.L.No. 73–486, 48 Stat. 1289, *et seq.*

The Supreme Court found five areas of constitutionally protected lienholder rights:

1. The right to retain the lien until the indebtedness thereby secured is paid.

2. The right to realize upon the security by a judicial public sale.

3. The right to determine when such sale shall be held, subject only to the discretion of the court.

4. The right to protect its interests in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

*Radford,* 295 U.S. at 594–95, 55 S.Ct. at 865–66.

The Court held that Frazier–Lemke abridged these rights and struck it down. If the 1935 view expressed in *Radford* represented the final word on the permissible limitation to secured creditors' rights, Chapter 12's fate could well be problematic. *See Albaugh v. Terrell,* 93 B.R. 115, 118 (E.D.Mich.1988); Note, *The Debtor's Right to Restrict Lienholder Recovery to the Value of the Encumbered Property Under Section 506 of the Bankruptcy Code,* 1986 J.Corp.Law 430, 451 (Spring 1986).

But *Radford* cannot be considered in a vacuum. Only two years later, in *Wright v. Vinton Branch of the Mountain Trust Bank,* the Supreme Court upheld a congressionally resuscitated version of the Frazier–Lemke Act. *Wright v. Vinton Branch of the Mountain Trust Bank,* 300 U.S. 440, 470, 57 S.Ct. 556, 566, 81 L.Ed. 736 (1937). This time the Court held that the amended Act made no "unreasonable modification" of the lienholder's rights and found it constitutional. *Id.,* 300 U.S. at 470, 57 S.Ct. at 566. The Court noted that

*Radford* did not stand for the proposition that a deprivation of as few as one of the five enumerated rights would be an unconstitutional taking. *Id.,* 300 U.S. at 457, 57 S.Ct. at 559. The Court suggested that *Radford* struck down the original Frazier–Lemke Act because the statute deprived the creditor of all five rights. *Id. Vinton Branch,* then, marks a clear departure from the rigid holding of *Radford.*

A further gloss was placed on *Radford* in *Wright v. Union Central Life Ins. Co.,* in 1941, when the Court addressed the issue of whether a debtor "must be accorded an opportunity ... to redeem [his] property at the reappraised value or at a value fixed by the court before the court may order a public sale." *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 275–76, 61 S.Ct. 196, 198, 85 L.Ed. 184 (1941). The Court held the proper value was that fixed by the court. *Id.,* 311 U.S. at 277, 61 S.Ct. at 199. The Court specifically noted that secured creditors are entitled to protection to the "extent of the value of the property" and "[t]here is no constitutional claim of the creditor to more than that." *Id.,* 311 U.S. at 278, 61 S.Ct. at 200.

This view found additional support this past term when the Court considered another aspect of the bankruptcy law in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.* There, the Supreme Court held that 11 U.S.C. § 362(d)(1) does not assure secured creditors extra value, and the creditor is not entitled to compensation, pursuant to 11 U.S.C. § 362(d)(1), for the delay caused by the automatic stay. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.,* 484 U.S. 365, ——, 108 S.Ct. 626, 635, 98 L.Ed.2d 740 (1988). The Court suggested that a secured creditor does not have a right to immediate foreclosure. *Id.,* 484 U.S. at ——, 108 S.Ct. at 630. This reasoning runs counter to *Radford's* specific assertion of a lienholder's right to "realize upon the security by a judicial public sale" and "to determine when such sale shall be held." [4] *Radford,* 295 U.S. at 594–

---

**4.** The Court interpreted the value of a lienholder's interest as the value of the secured property.

95, 55 S.Ct. at 865–66. The 1988 Court's holding strongly suggests that secured creditors do not enjoy absolute protection—even of the five *Radford* elements.

Creditors' rights have been considered, and limited, in other contexts. In particular, the Supreme Court upheld limitations on railroad creditors under the Bankruptcy Act of 1898,[5] *see Reconstruction Fin. Corp. v. Denver & Rio Grande W.R.R.,* 328 U.S. 495, 533, 66 S.Ct. 1282, 1301–02, 90 L.Ed. 1400 (1946), and has routinely allowed impairment of unsecured creditors' rights.[6] *See Hanover National Bank of the City of New York v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902).

*Vinton Branch, Union Central,* and subsequent cases further suggest that secured creditors do not automatically enjoy the full panoply of protections outlined in *Radford.* Indeed, *Vinton Branch* and *Union Central* indicate that the fifth amendment protection extends no further than the appraised value of the secured property. While *Radford* remains good law, it must be viewed through the prism of later Supreme Court decisions. It is fair to say that the Supreme Court respects Congress' efforts to adjust the economic balances in times of financial difficulty.

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, ——, 108 S.Ct. 626, 630, 98 L.Ed.2d 740, 749 (1988).

5. The 1898 Act provided that creditors of railroads were entitled to approve a reorganization plan. Pub.L.No. 74–818, 49 Stat.1965 (repealed by Bankruptcy Reform Act of 1978, Pub.L.No. 95–958, §§ 401(a), 403(b), 92 Stat. 2549, 2682, 2683). A creditor whose interest had *no value,* however, was excluded from the plan and received nothing under the plan of reorganization. Pub.L.No. 74–818, 49 Stat.1965, 1970. This aspect of the Act was upheld by the Supreme Court. *Reconstruction Fin. Corp. v. Denver & Rio Grande W.R.R.,* 328 U.S. 495, 533, 66 S.Ct. 1282, 1301–02, 90 L.Ed. 1400 (1946). The Court also noted that Congress could eliminate valueless claims, *Ecker v. Western Pacific R.R.,* 318 U.S. 448, 475–76, 63 S.Ct. 692, 708, 87 L.Ed. 892 (1943), and that Congress' bankruptcy powers include those which require creditors to adjust their claim to the value of their lien. *Reconstruction Fin. Corp.,* 328 U.S. at 533, 66 S.Ct. at 1301–02 (citing *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1941)).

In this proceeding, the bankruptcy court adjusted the Dahlkes' secured claim from $124,000 to the 1987 appraised market value of $75,000, pursuant to 11 U.S.C. § 1225(a)(5). The Dahlkes contend this revision works a substantive unconstitutional taking. The Court cannot agree.

From the review of the Supreme Court's bankruptcy cases above, it is clear that Congress is entitled to fashion debtor relief in ways which may ultimately impinge upon secured creditors' claims. Further, it is clear that while this power may work a consequent hardship upon creditors, it is not unconstitutional as a substantive violation of the fifth amendment. The Court finds the approved plan is not an unconstitutional taking in violation of the fifth amendment of the United States Constitution.

## II. Chapter 12 Retroactivity

■ The Dahlkes argue that Chapter 12, enacted in 1986, may not be applied retroactively to a 1978 loan agreement. Section 1225(b), along with the rest of Chapter 12, became effective on November 26, 1986.[7] The Dahlkes argue that, as a matter of statutory construction, Chapter 12 is not to be applied retroactively.

6. An unsecured creditor is subject to considerable impairment of his claim, the most severe being a complete discharge of the debt. *See* Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship Between the Fifth Amendment and the Bankruptcy Clause,* 96 Harv.L.Rev. 973, 989 (1983). The Supreme Court has upheld the validity of the reduction or destruction of unsecured creditors' claims. *Hanover National Bank of the City of New York v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902). Although there are certainly inherent differences between a secured and unsecured creditor, *see* Rogers, *supra,* at 988–95, the Supreme Court has demonstrated a willingness to uphold impairment of these rights in the face of the fifth amendment takings clause.

7. Act of Oct. 27, 1986, Pub.L.No. 99–554, Title III, § 302, 100 Stat. 3119, codified at 28 U.S.C. § 581 note. The bill was passed by the House of Representatives on October 2, 1986, and by the Senate on October 3, 1986. The President signed the bill on October 27, 1986.

■ Classic principles of statutory construction provide that a statute may not be applied retroactively absent "the unequivocal and inflexible import of [its] terms, and the manifest intention of the legislature." *Union Pacific Railroad Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913); *see Holt v. Henley*, 232 U.S. 637, 639, 34 S.Ct. 459, 460, 58 L.Ed. 767 (1914). It follows that a court should decline to give a statute retroactive construction if it is susceptible to any other interpretation. *United States Fidelity & Guaranty Co. v. United States, ex rel. Struthers Well Co.*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908). But the Supreme Court has clearly provided that retroactive effect can be given either if the statute so states or if such construction is required by necessary implication.[8] *Bruner v. United States*, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952). Bankruptcy statutes fall within these general principles.

The Supreme Court has recently reaffirmed its reluctance to give automatic retroactive effect to bankruptcy statutes. In *United States v. Security Industrial Bank*, the Court declined to apply § 522(f) of the bankruptcy code on a retroactive basis. *United States v. Security Industrial Bank*, 459 U.S. 70, 82, 103 S.Ct. 407, 414, 74 L.Ed.2d 235 (1982). The Court held that § 522(f) (which permits individual debtors in bankruptcy proceedings to avoid nonpossessory, non-purchase money liens on certain property such as household furnishings and appliances) was not intended to impair pre-enactment property rights. *Id.*, 459 U.S. at 83, 103 S.Ct. at 414. The Court stated that "[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress." [9] *Id.* The Court recognizes that the broad language of *Security Industrial Bank* poses an obstacle to retroactive application of Chapter 12.

■ Chapter 12 contains, on its face, no explicit language granting retroactive effect. Indeed, the statute does not include any language indicating Congress' intent to affect pre-existing loans. Yet, this Court must also consider "the manifest intention of the legislature." *Union Pacific Railroad*, 231 U.S. at 199, 34 S.Ct. at 102. In this regard, this Court may look beyond the plain words of the statute to implement Congress' intent. *See, e.g., Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (statements by sponsors or drafters of legislation); *Bankamerica Corp. v. United States*, 462 U.S. 122, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983) (hearings and floor debates); *Leo Sheep Co. v. United States*, 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979) (circumstances surrounding the introduction and consideration of legislation); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (committee reports); *see generally* W. Eskridge & P. Frickey, *Legislation: Statutes and the Creation of Public Policy*, 696–74 (1988); Dickerson, *Statutory Interpretation: Dipping into Legislative History*, 11 Hofstra L.Rev. 1125 (1983).

The legislative history of Chapter 12 is replete with evidence indicating Congress intended the remedial measures of the statute to apply to pre-existing loans.[10] The Court finds that Congress clearly contem-

---

**8.** *Compare United States v. St. Louis, S.F. & T.Ry. Co.*, 270 U.S. 1, 3, 46 S.Ct. 182, 183, 70 L.Ed. 435 (1926), *with Smallwood v. Gallardo*, 275 U.S. 56, 61, 48 S.Ct. 23, 23–24, 72 L.Ed. 152 (1927).

**9.** *Security Industrial Bank*, on facts much different than those at issue here, found that retroactive application would itself implicate the fifth amendment's taking proscription. *United States v. Security Industrial Bank*, 459 U.S. 70, 82, 103 S.Ct. 407, 414, 74 L.Ed.2d 235 (1982). This Court, in section I, *supra*, has explicitly found that, in this case, invocation of Chapter 12 does

not result in an unconstitutional taking. Neither present nor retroactive application would change the fact that this is not a fifth amendment taking.

**10.** The legislative history of Chapter 12 differs from that of the legislation in *Security Industrial Bank* in an important respect. Originally, § 522 contained a provision specifically calling for retroactive application. 459 U.S. at 81, 103 S.Ct. at 414. That provision was retracted prior to passage. *Id.* The legislative history of Chapter 12 does not evince a similar decision by Congress. As such, this case may be distinguished

plated giving Chapter 12 full retroactive effect.

As discussed at the outset, the Family Farmer Bankruptcy Act of 1986 was passed to alleviate some of the hardships encountered by American farmers in recent years. H.R.Conf.R. at 48, USCCAN at 5249; 132 Cong.Rec. S15075, S15075–94 (daily ed. Oct. 3, 1986) (statements of Senator Thurmond and Senator Grassley); Armstrong, *Family Farmer Bankruptcy Act of 1986,* 104 Banking L.J. 189, 189–214 (1987). The problems are well-documented and need not be repeated here. It is sufficient to point out that Congress recognized the problems facing farmers in bankruptcy proceedings:

> Most family farmers have too much debt to qualify as debtors under Chapter 13 and are thus limited to relief under Chapter 11. Unfortunately, many family farmers have found Chapter 11 needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable.

H.R.Conf.R. at 48, USCCAN at 5249.[11]

In response to these problems, Congress enacted Chapter 12, designed solely for family farmers. It makes substantial changes to the existing code and simplifies the reorganization process. The chapter also gives farmers special treatment on certain farm debts.[12]

Congress intended the family farmer provisions to be novel, but shortlived.[13] The statute by its terms expires after only seven years.[14] 28 U.S.C. § 581 note. The short lifetime of Chapter 12 suited Congress' desire to "evaluate both whether the chapter is serving its purpose and whether there is a continuing need for a special chapter for the family farmer." H.R. Conf.R. at 48, USCCAN at 5249. Common sense suggests Congress was mindful of the farmers' existing loans when it set the seven year limitation.

Had Congress intended Chapter 12 to be applied only prospectively, its security-adjusting feature would be rendered trivial. First, the enactment would do nothing to assist those farmers already in trouble as a result of past economic difficulties. It is clear from the legislative history that these farmers are precisely the persons Congress had in mind.[15] Second, lenders would rea-

---

from *Security Industrial Bank* on the basis of clear legislative background supporting retroactive application rather than undercutting the same.

**11.** During discussion of the bill, one of the drafters of the new bankruptcy provisions noted:

> The numbers of farms in financial trouble or on the brink of foreclosure is well known. But the measure of the crisis in agriculture isn't measured by cold numbers on a page. Instead, I measure it in terms of the human tragedy, the disruption of lives, and the despair of being a middle-aged farmer suddenly told to find another livelihood to support a family.
> I hear it and I see it when I go back home every weekend. I know my colleagues have seen it too. We simply must stop the displacement. We must stop the bleeding on the farm.
> Mr. President, I harbor no illusions about the ability of the Federal Bankruptcy Code to redress farmers' grievances. I know as well as anyone that the economic causes of the crises in agriculture lie well beyond the realm of bankruptcy.
> But hearings in the House and Senate led to the unmistakable conclusion that the Bankruptcy Code doesn't work for farmers.

132 Cong.Rec. S15075, S15075–76 (daily ed. Oct. 3, 1986) (statements of Senator Grassley).

**12.** *See* n. 1.

**13.** The debates made clear that:

> This legislation creates new and expanded protections for a majority of American Farmers in the bankruptcy courts. It is important, however, that we remember that the family farm provisions of this bill are an extraordinary response to what is, hopefully, a temporary crisis.

132 Cong.Rec. 515075, 515075 (daily ed. Oct. 3, 1986) (statement of Senator Thurmond).

**14.** Some supporters of the bill asked for an even earlier sunset period of five years. 132 Cong. Rec. S15075, S15075 (daily ed. Oct. 3, 1986) (statement of Senator Thurmond).

**15.** One critic has summed up this point quite succinctly:

> As long as bankruptcy acts [are] seen as temporary relief measures enacted to alleviate existing economic troubles, the idea of nonretroactive bankruptcy legislation would be almost an absurdity: a newly enacted bankruptcy act that did not apply to pre-existing debts could hardly relieve the plight of existing ... debtors.

Rogers, *supra* n. 7, at 1016.

sonably adjust their future practices to avoid the chapter's reach. Lastly, in an absurd result, the farmer, hoping to avail himself of Chapter 12, would apparently have to undertake a loan, inimical to his interests, and then almost immediately seek to place himself into a bankrupt position in order to make a Chapter 12 filing prior to the 1993 sunset date. Congress could not have intended anything but an immediate implementation with immediate effect.

The Court finds that Chapter 12 is intended to have retroactive application; secured real estate loans consummated prior to the 1986 effective date fall within the reorganization provisions of the statute.

The Court recognizes that affirming the reorganization plan in this case may, as an incidental result, adversely affect a member of the very class intended to be protected by Chapter 12. The creditors in this case are also family farmers. This isolated anomalous result cannot undo the clear intent of Congress in its efforts to secure its goal of relief for the majority of America's family farmers.

III. Order

For the reasons set forth above, IT IS ORDERED that:

The judgment of the bankruptcy court is affirmed.